EXHIBIT 1

TO

VERIFIED COMPLAINT *IN REM*

DECLARATION OF JESSE PILOTE

# DECLARATION OF JESSE PILOTE

# IN SUPPORT OF COMPLAINT

I, Jesse Pilote, provide the following information under the penalty of perjury, as provided by 28 U.S.C. § 1746, and declare that the following is true and correct to the best of my knowledge, information and belief.

## A. Declarant's Background

1. I am a Task Force Officer with the Metro Nashville Airport Police Department, currently assigned to the Drug Enforcement Administration ("DEA"), Nashville Field Office. I have been a Task Force Officer ("TFO") since July 2009. During my tenure, I have been involved in hundreds of narcotics and drug-related investigations involving violations of international, federal, and state narcotics laws. I have authored and executed numerous federal and state search warrants and authored numerous federal and state affidavits for authorization for the interception of wire communications. Currently, I am responsible for investigating crimes that involve the unlawful importation and exportation of illegal narcotics, the possession with the intent to distribute controlled substances, the distribution of controlled substances, conspiracy, the use of communication facilities to further these offenses, the related crime of laundering monetary instruments, all in violation of Title 21, United States Code, Sections 841(a)(1), 843, 846 and 952, Title 18, United States Code, Sections 1956 and 1957, and structuring money to evade reporting requirements, in violation of Title 31, United States Code, Section 5324.

## B. Items Sought for Forfeiture

2. Pursuant to 21 U.S.C. § 881(a)(6), the United States seeks the forfeiture of $67,900 United States currency ("Defendant Property") because it is monies or a thing of value furnished or intended to be furnished by any person in exchange for a controlled substance or it

is proceeds traceable to such an exchange, or monies used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. §§ 801 *et seq*., including 21 U.S.C. §§ 841 and 846.

**C.     Basis of Information**

3.     The information in this Declaration was obtained through my personal observations, training and experience, information gathered during interviews of and conversations with civilians and other law enforcement officers, and written reports and investigations conducted by other law enforcement officers. I have not included every item of information known to me concerning the Defendant Property and the facts surrounding this Declaration, but only those relevant to a determination that the Defendant Property is subject to forfeiture.

**D.     Facts**

4.     On January 20, 2023, DEA Nashville Task Force Group 2 received information from a Confidential Source ("CS") in reference to a Passenger Name Record for Phildarius Markeal Butler ("Mr. Butler"), who was traveling from Nashville, Tennessee ("BNA") to Los Angeles California ("LAX"). Records indicated that Mr. Butler had booked his flight nine days prior and was showing no return flights from LAX back to BNA. Mr. Butler was scheduled to depart BNA on January 20, 2023, at 12:05 p.m., via Southwest Airlines flight 1152, arriving at LAX at approximately 4:37 p.m., CST. Records indicated that Mr. Butler checked one piece of luggage.

5.     A criminal history check using the National Crime Information Center ("NCIC") revealed Mr. Butler was arrested in 2013 for Manufacture/Deliver/Sale of Marijuana in Memphis, Tennessee.

3

Case 3:23-cv-00666   Document 1-1   Filed 07/05/23   Page 3 of 7 PageID #: 7

6. At approximately 10:54 a.m., Metropolitan Nashville Airport Authority ("MNAA") Detective Chris Lueders ("Det. Lueders") and I located Mr. Butler's checked luggage. I placed Mr. Butler's checked luggage in an array of other checked luggage present on SWA1152. Det. Lueders then introduced his narcotics trained K-9, "Power", to the array of checked luggage; at which time, Power showed a positive alert for the odor of narcotics emanating from the checked luggage belonging to Mr. Butler.

7. At approximately 11:00 a.m., DEA Task Force Officer Patrick Fegan ("TFO Fegan") and DEA Task Force Officer Jeffrey McCliss ("TFO McCliss") made contact with Mr. Butler at Gate C25. Investigators noted that both Mr. Butler's sweatpants and sweatshirt were "legally trapping" attire, and in addition to the checked luggage, Mr. Butler was in possession of a green backpack. TFO Fegan and TFO McCliss approached Mr. Butler and identified themselves as law enforcement officers with the Drug Enforcement Administration. Investigators were dressed in typical street attire and had no weapons or badges exposed.

8. TFO Fegan informed Mr. Butler that a narcotics trained K-9 alerted to the odor of narcotics from his checked luggage, and asked Mr. Butler if there were any illegal narcotics within the luggage. Mr. Butler stated there were pills located in a sock that he was prescribed for dental work. TFO Fegan asked Mr. Butler if investigators could search his checked luggage, Butler agreed and provided a combination to the lock that was on his checked luggage. TFO Fegan asked Mr. Butler if there were any narcotics in the green backpack that he had on his person. Mr. Butler stated there was not and provided consent for TFO Fegan to search the green backpack. The results of the search of the green backpack on Mr. Butler's person was negative for any illegal contraband. TFO Pilote attempted to access Mr. Butler's checked luggage with the combination provided by Mr. Butler but was unsuccessful. Since investigators were unable

4

to access the luggage with the combination provided by Mr. Butler, TFO Fegan asked Mr. Butler if investigators could bypass the lock to access the checked luggage. Mr. Butler agreed.

9. A search of Mr. Butler's checked luggage by Det. Lueders and I revealed numerous stacks of rubber-banded United States currency, concealed within the pockets of clothing inside the checked luggage. Additionally, several bundles of United States currency were discovered within two black zipper pouches inside the checked luggage; no other contraband was discovered. Investigators noted that many of the clothing items inside the checked luggage were new and contained the price tags. TFO Fegan and TFO McCliss asked Mr. Butler if he would accompany investigators to the DEA office located within the airport to discuss the large sum of United States currency in his possession; Mr. Butler agreed.

10. At Approximately 11:10 a.m., investigators and Mr. Butler arrived at the DEA Office. Investigators informed Mr. Butler that he was not under arrest and was free to leave at any time. Det. Lueders and I opened Butler's checked luggage and placed the concealed United States currency on a nearby table in the presence and within view of Mr. Butler. TFO McCliss asked Butler how much United States currency he had in his checked luggage; Mr. Butler stated that it was between $50,000 and $60,000.

11. TFO McCliss asked Mr. Butler what he did for a living; Mr. Butler stated that he drove for a company called Reliable Transportation and makes approximately $5,000 per month. Mr. Butler continued by stating he also invested in a company called Vast Ties Beauty, making an additional $3,500 per month, and was starting a clothing business with his child. TFO McCliss then asked why he was transporting such a large quantity of United States currency to Los Angeles, California. Mr. Butler stated that he was going to purchase a business truck.

12. TFO McCliss asked Mr. Butler about his criminal history; Mr. Butler stated that he had no major criminal offenses but had been arrested multiple times for simple possession of marijuana.

13. TFO McCliss asked Mr. Butler why such a large sum of United States currency was concealed in articles of clothing inside the checked luggage instead of being carried on his person. Mr. Butler stated that he has had problems with TSA in the past. When questioned about the source of the United States currency, Mr. Butler stated that it was not withdrawn from a bank and that it was from saving.

14. Det. Lueders placed the United States currency recovered from Mr. Butler's checked luggage in an unmarked box and placed that box in an array of empty unmarked boxes. At approximately 11:30 p.m., Det. Lueders introduced his narcotics detection trained K-9 "Power" to the array of boxes, and Power indicated a positive alert for the odor of narcotics on the box containing the United States currency.

15. I asked Mr. Butler if he could provide any proof of sale negotiations like text message or advertisements for the business truck he was going to purchase. Mr. Butler was unable to produce any documentation to corroborate his plan to purchase the truck and declined consent to search his cell phone.

16. I explained to Butler that the United States currency was being seized as suspected drug proceeds. DEA Task Force Officer Matt Moore sealed the United States currency in an SSEE as witnessed by TFO McCliss and Mr. Butler. Mr. Butler signed the SSEE as the owner/possessor of the United States currency and was provided a copy of the DEA-12.

17. At approximately 11:37 a.m., investigators escorted Mr. Butler to the Southwest Airline gate to allow him to make his flight.

18. Upon transferring the United States currency to Loomis for an official count, it was further determined to be $67,900 United States currency.

**E.  Conclusion**

19. Based on the foregoing, my experience and training, and the facts of this investigation, I believe the facts support a reasonable belief that the Defendant Property is monies furnished or intended to be furnished by any person in exchange for a controlled substance or proceeds traceable to such an exchange, or monies used or intended to be used to facilitate any violation of 21 U.S.C. §§ 801 *et seq.*, including 21 U.S.C. § 841 (illegal drug trafficking) and 21 U.S.C. § 846 (attempted drug trafficking).

20. The Defendant Property is therefore forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

Task Force Officer, Jesse Pilote
Drug Enforcement Administration